## SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

This Settlement Agreement and Mutual General Release (the "Agreement") is made and entered into on the date(s) reflected below by and between US CHUTES LLC, US CHUTES, CORP., and JOHN WEBER a/k/a MANFRED JOHN WEBER, JR. (collectively, the "Company"), on the one hand, and JEFFREY MCDONALD ("McDonald"), ELKE HUPALO ("Hupalo") and JOSHUA BISHOP ("Bishop"), (collectively, the "Plaintiffs"), on the other hand.

WHEREAS:

A.     The Plaintiffs previously performed services for the Company.

B.     In or about May 2015, Plaintiffs filed a lawsuit against the Company in the United States District Court for the Southern District of Florida (the "District Court"), styled *Jeffrey McDonald, Elke Hupalo, Joshua Bishop, and all others similarly situated under 29 U.S.C. 216(b) v. US Chutes, LLC, US Chutes, Corp., and John Weber a/k/a Manfred John Weber, Jr.*, CASE NO. 9:15-cv-80667-RLR (Rosenberg/Hopkins) (the "Civil Action").

C.     The Plaintiffs claim that they are entitled to but did not receive from the Company certain compensation allegedly owed to them pursuant to the Fair Labor Standards Act of 1938, as amended (the "Alleged Compensation Amount").

D.     The Company denies that the Plaintiffs are entitled to receive the Alleged Compensation Amount or any part thereof.

E.     The Company denies each and every material allegation set forth in the Civil Action, and denies having committed any wrong or causing any injury to the Plaintiffs.

F.     There are bona fide disputes between the Company and the Plaintiffs as to whether the Plaintiffs are entitled to receive the Alleged Compensation Amount or any part thereof, including whether McDonald and Bishop were even employees of the Company.

G.     In order to avoid the further costs and burdens of litigation, the Company and the Plaintiffs now desire to settle fully and finally any and all differences between them, including, but not limited to, those differences embodied in the Civil Action.

NOW, THEREFORE, the Company and the Plaintiffs agree as follows:

1.     The foregoing recitals constitute part of this Agreement.

2.     In consideration of this Settlement Agreement and the mutual promises set forth herein, and in full, final and complete settlement, the Company shall cause to be paid

**JM Initials** _JM_
**EH Initials** _____
**JB Initials** _____

**EXHIBIT "A"**

to the Plaintiffs and their attorneys, The Markel Law Firm ("Markel"), the total gross amount of Eleven Thousand Dollars and No Cents ($11,000.00) (the "Settlement Amount"). Plaintiff McDonald shall receive the total gross amount of Five-Thousand Dollars ($5,000.00) for Plaintiff McDonald's alleged unpaid overtime compensation and liquidated damages ($2,500.00 is for alleged unpaid overtime compensation and $2,500.00 is for alleged liquidated damages), Plaintiff Hupalo shall receive the total gross amount of One-Thousand Seven Hundred Fifty Dollars ($1,750.00) for Plaintiff Hupalo's alleged unpaid overtime compensation and liquidated damages ($875.00 is for alleged unpaid overtime compensation and $875.00 is for alleged liquidated damages), Plaintiff Bishop shall receive the total gross amount of One-Thousand Two Hundred Fifty Dollars ($1,250.00) for Plaintiff Bishop's alleged unpaid overtime compensation and liquidated damages ($625.00 is for alleged unpaid overtime compensation and $625.00 is for alleged liquidated damages), and Markel shall receive the total gross amount of Three-Thousand Dollars ($3,000.00) ($2,155.00 for attorney's fees and $845.00 for costs and additional consideration for this Agreement). The Settlement Amount shall be paid in five (5) monthly installments, as follows:

- a. Within ten (10) days of the District Court approving this Agreement and dismissing the Civil Action with prejudice:

  - (i) a check made payable to the trust account of The Markel Law Firm in the gross and net sum of Three Thousand Dollars and No Cents ($3,000.00), with no deductions or withholdings.

- b. Within thirty (30) days of the check set forth in paragraph 2(a)(i):

  - (i) a check made payable to the trust account of The Markel Law Firm in the gross and net sum of Three Thousand Dollars and No Cents ($2,000.00), with no deductions or withholdings.

- c. Within thirty (30) days of the check set forth in paragraph 2(b)(i):

  - (i) a check made payable to the trust account of The Markel Law Firm in the gross and net sum of Three Thousand Dollars and No Cents ($2,000.00), with no deductions or withholdings.

- d. Within thirty (30) days of the check set forth in paragraph 2(c)(i):

  - (i) a check made payable to the trust account of The Markel Law Firm in the gross and net sum of Three Thousand Dollars and No Cents ($2,000.00), with no deductions or withholdings.

- e. Within thirty (30) days of the check set forth in paragraph 2(d)(i):

**JM Initials** _JM_
**EH Initials** _____
**JB Initials** _____

**EXHIBIT "A"**

     (i)     a check made payable to the trust account of The Markel Law Firm in the gross and net sum of Three Thousand Dollars and No Cents ($2,000.00), with no deductions or withholdings.

     f.     The payments set forth above for Plaintiffs' amounts will be reported by the Company for tax purposes on form 1099 to be issued to Plaintiffs and the payments set forth above attributable to attorney's fees and costs will be reported by the Company for tax purposes on form 1099 to be issued to Plaintiffs' attorney.  Plaintiffs agree and understand that no taxes shall be withheld from these payments.  The Plaintiffs further represent, warrant, and acknowledge that the payments to Plaintiffs' attorney set forth above is entirely at their instigation and request both as to fact and amount, and for their convenience, and that the Company is not in any manner whatsoever involved in their request that such payment be so directed.  The Plaintiffs agree and acknowledge that, between them, as allocated pursuant to applicable law, they will be solely responsible for the payment of any and all taxes with respect to the payments referenced in this Paragraph, and each represents and warrants that such taxes will be timely and fully paid.

     g.     In the event that the Company fails to make timely payment of any sums due under this Agreement, the Company shall be deemed in default of this Agreement.  In such event, Plaintiffs shall provide the Company written notice of its default via email and U.S. Mail to Robin I. Frank, Esq., Shapiro, Blasi, Wasserman & Hermann, P.A., 7777 Glades Road, Suite 400, Boca Raton, FL 33434; (561) 477-7722; rifrank@sbwlawfirm.com, and via email and Certified Mail, Return Receipt Requested, to John Weber, U.S. Chutes, Corp., 751 Park of Commerce Drive, Boca Raton, FL 33487; jweber@uschutes.com,and provide the Company ten (10) days from the date of the Company's counsel's receipt or John Weber's receipt, whichever is later, of the notice to correct such default.  If the Company fails to cure such default within said time period, Plaintiffs shall be entitled to apply for the entry of a default judgment against the Defendants, jointly and severally, for the total amount of $15,000.00, less any payments made hereunder.

     3.     The Plaintiffs and the Company hereby authorize and instruct their respective attorneys to submit the Settlement Agreement to the District Court.  The Plaintiffs and Plaintiffs' counsel further agree to take whatever other actions are necessary to effectuate the dismissal with prejudice of the Civil Action, including, but not limited to, filing additional motions should the District Court disapprove the Settlement Agreement.

     4.     Plaintiffs agree and acknowledge that they shall not in the future provide any services to, or be employed by, the Company.  Plaintiffs further agree and acknowledge that they will not knowingly accept, apply for, or otherwise seek employment with, or otherwise seek to perform services for, the Company, or any of its subsidiaries, divisions, related companies, or controlling shareholders (direct or indirect) at any time.  In the event that Plaintiffs are inadvertently employed by any of the foregoing (including as an independent contractor), they will promptly notify the employing person or entity of their

**JM Initials** ⟍JⱮ

**EH Initials** _____

**JB Initials** _____

**EXHIBIT "A"**

obligation to resign from such employment, and the employing entity shall have the right to require their resignation forthwith.

5.      Plaintiffs represent, warrant, and acknowledge that the Company does not owe them any wages, commissions, bonuses, vacation pay, or other compensation or payments of any kind or nature beyond what is set forth in this Agreement.  Plaintiffs agree and understand that the amounts paid by or on behalf of the Company pursuant to this Agreement are being paid strictly and solely for purposes of settlement and that the Company expressly denies that the Plaintiffs are entitled to receive the Alleged Compensation Amount or any part thereof.

6.      Notwithstanding that the Company expressly denies that the Plaintiffs are entitled to receive the alleged Compensation Amount or any part thereof, Plaintiffs represent, warrant, and agree that the amounts paid by or on behalf of the Company pursuant to this Agreement represent payment-in-full of (a) the Alleged Compensation Amount; and (b) any and all others amounts which the Plaintiffs sought or could have sought in the Civil Action, including but not limited to alleged unpaid wages, alleged liquidated damages, and costs and attorney's fees, including amounts pursuant to the Fair Labor Standards Act of 1938, as amended.

7.      Plaintiffs, in consideration of this Agreement and the mutual promises set forth herein, and for other good and valuable consideration received from or on behalf of the Company, receipt whereof is hereby acknowledged, hereby *release and forever discharge* the Company and the Company's parent companies, subsidiaries, divisions, affiliates, related companies, predecessors, successors, heirs, executors, administrators, assigns, shareholders (direct or indirect), directors, officers, employees, agents, and attorneys (and the shareholders (direct or indirect), directors, officers, employees, agents, and attorneys of such parent companies, subsidiaries, affiliates, and related companies), and all persons acting by, through, under, or in concert with any of them, and John Weber, individually, and his respective heirs, executors, administrators, successors, and assigns, successors, and assigns (the Company and the foregoing other persons and entities are hereinafter defined separately and collectively as the "Defendant Releasees"), from all actions, causes of action, debts, sums of money, accounts, covenants, contracts, agreements, promises, damages, judgments, claims, and demands whatsoever, *whether known or unknown*, either in law or equity, whether statutory or common law, whether federal, state, local, or otherwise, including, but not limited to, any claims related to, or arising out of any aspect of Plaintiffs' relationship or employment with the Company, any agreement concerning such employment or relationship, or the termination of such employment or relationship, including, but not limited to:

(a)     any and all claims asserted, or which could have been asserted, in the Civil Action, including, but not limited to, any and all claims under the Fair Labor Standards Act of 1938, as amended;

**JM Initials** ＪＭ
**EH Initials** _____
**JB Initials** _____

Page 4 of 16

**EXHIBIT "A"**

(b)      any and all claims of wrongful discharge or breach of contract, any and all claims for equitable estoppel, any and all claims for employee benefits, including, but not limited to, any and all claims under the Employee Retirement Income Security Act of 1974, as amended, and any and all claims of employment discrimination on any basis, including, but not limited to, any and all claims under Title VII of the Civil Rights Act of 1964, as amended, under the Age Discrimination in Employment Act of 1967, as amended (the "ADEA"), under the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended, under the Civil Rights Act of 1991, as amended, under the Americans with Disabilities Act of 1990, as amended, under the Immigration Reform and Control Act of 1986, as amended, under the Family and Medical Leave Act of 1993, as amended, under the Florida Civil Rights Act of 1992, as amended, under the Florida Equal Pay Law, as amended, under the Florida Wage Discrimination Law, as amended, and under the Florida Minimum Wage Law, as amended;

(c)      any and all claims under any other federal, state, or local wage and hour law, employment law, labor law, civil rights law, human rights law, or workers' compensation law;

(d)      any and all claims of slander, libel, defamation, invasion of privacy, intentional or negligent infliction of emotional distress, negligent misrepresentation, fraud, negligent hiring, supervision or retention, assault and battery, and prima facie tort; and

(e)      any and all claims for monetary recovery, including, but not limited to, back pay, front pay, liquidated, compensatory or punitive damages, attorneys' fees, experts' fees, disbursements, and costs;

which, against the Defendant Releasees, Plaintiffs or their respective heirs, executors, administrators, successors, and assigns ever had, now has, or hereafter can, will, or may have, for, upon, or by reason of any matter, cause, or thing whatsoever from the beginning of the world to the date Plaintiffs execute this Agreement.

8.      Plaintiffs understand and acknowledge that there may be facts or information which they do not know or suspect to exist in their favor at the time they execute this Agreement, and they agree that this Agreement is intended to and does extinguish any and all claims they might have based on such facts or information.

9.      Excepting only the Civil Action, Plaintiffs represent and warrant that they have never commenced or filed, and covenant and agree never to commence, file, aid, or in any way prosecute or cause to be commenced or prosecuted against the Defendant Releasees, or any of them, any action, charge, complaint, or other proceeding, whether administrative, judicial, legislative, or otherwise, including, but not limited to, any action or proceeding for attorneys' fees, experts' fees, disbursements, or costs, based upon or seeking relief on account of actions or failures to act by the Defendant Releasees, or any of them, which may have occurred or failed to occur before their execution of this Agreement.

**JM Initials** _____
**EH Initials** _____
**JB Initials** _____

Page 5 of 16

**EXHIBIT "A"**

10.     Plaintiffs represent and warrant that no other person is entitled to assert any claim based on or arising out of any alleged discriminatory, unlawful, wrongful, tortious, or other conduct against them by the Defendant Releasees, or any of them, including, but not limited to, any and all claims for attorneys' fees, experts' fees, or damages resulting as a consequence thereof, based upon or seeking relief on account of actions or failures to act by the Defendant Releasees which may have occurred or failed to occur before their execution of this Agreement.  Plaintiffs further represent and warrant that they have not assigned and will never assign any such claim, and that in the event any such claim is filed or prosecuted by any other person or entity, they will cooperate fully with the Defendant Releasees and will move immediately to withdraw their name and to disassociate themselves completely from any such claim, will request such person or entity to withdraw such claim with prejudice, and will not voluntarily cooperate with or testify on behalf of the person or entity prosecuting such claim.

11.     (a)     Plaintiffs acknowledge that maintaining the Company's good reputation in the community is of *paramount importance* to the Company.  Accordingly, Plaintiffs agree that they will not disparage or encourage or induce others to disparage the Company or any of the Defendant Releasees by any type of communication, whether verbally, in writing, through gesture or other non-verbal means (such as winks or nods of the head), or otherwise. This prohibition includes disparagement through any social media or apps, including but not limited to facebook, blogs, twitter, etc.

(b)     Plaintiffs agree, represent and warrant that they shall not at any point in the future (a) directly communicate with the Company, including but not limited to any officers, directors or administrative or managerial employees of the Company, and which also includes communications through any social media or apps, including but not limited to facebook, blogs, twitter, etc.; (b) visit the Company's offices, stores or places of operations; (c) step foot on any properties at which the Company is operating out of or at; (d) step foot on any customer's properties at which the Company is providing services and during the time that the Company is providing services to that customer.

12.     Plaintiffs acknowledge that if they materially breach this Agreement, breach the non-disparagement provisions of this Agreement and/or commence a suit, action, proceeding or complaint in contravention of this Agreement and waiver of claims, the Company shall be entitled to all remedies allowed in law or equity, including but not limited to the return of that portion of the liquidated damages payment paid to Plaintiffs pursuant to this Settlement Agreement.

13.     Excepting claims based upon representations, warranties, agreements, covenants, and promises made in or pursuant to this Agreement, including but not limited to the agreements set forth in Paragraphs 11 and 12 above, the Company, in consideration of this Agreement and the mutual promises set forth herein, and for other good and

**JM Initials** _JM_
**EH Initials** _____
**JB Initials** _____

Page 6 of 16

**EXHIBIT "A"**

valuable consideration received from or on behalf of the Plaintiffs, receipt whereof is hereby acknowledged, *release and forever discharge* the Plaintiffs and Plaintiffs' heirs, executors, administrators, successors, and assigns, from all actions, causes of action, debts, sums of money, accounts, covenants, contracts, agreements, promises, damages, judgments, claims, and demands whatsoever, *whether known or unknown*, either in law or equity, whether statutory or common law, whether federal, state, local, or otherwise, including, but not limited to, any claims related to, or arising out of any aspect of the Plaintiffs' employment or relationship with the Company, any agreement concerning such employment or relationship, or the termination of such employment or relationship, which, against the Plaintiffs, the Company ever had, now has or hereafter can, will, or may have, by reason of any matter or cause whatsoever from the beginning of the world to the date the Company executes this Agreement.

14.     Should any part, term, or provision of this Agreement be declared or determined by a court of competent jurisdiction to be illegal, invalid, or unenforceable, the validity of the remaining parts, terms, or provisions will not be affected thereby, and said illegal, invalid or unenforceable part, term, or provision will be deemed not to be a part of this Agreement.

15.     No payment made pursuant to this Agreement shall constitute or be considered "wages," "earnings" or "compensation" for any purpose under any retirement plan, welfare plan, stock purchase plan, bonus plan, employee stock ownership plan or vacation policy of the Company.

16.     In the event that there is any litigation (including appellate proceedings or arbitration) arising out of or relating to this Agreement, the prevailing party shall recover, in addition to any and all other relief, his or its attorneys' fees and expenses.

17.     This Agreement is to be interpreted, construed, and enforced pursuant to the substantive laws of the State of Florida and, where applicable, federal law. Any action or proceeding relating to or arising out of this Agreement shall be brought in the District Court or in a court of competent jurisdiction in Palm Beach County, Florida.

18.     Should any term or provision of this Agreement require interpretation or construction, it is agreed by the parties that the court or other entity interpreting or construing this document shall not apply any presumption that the terms and provisions of this Agreement shall be more strictly construed against any particular party, it being agreed that all parties and their respective attorneys have fully participated in the preparation of all terms and provisions of this Agreement.

19.     This Agreement sets forth the entire agreement between the parties hereto, fully supersedes any and all prior agreements or understandings between the parties regarding the subject matter hereof, and may not be modified orally.

**JM Initials** _____
**EH Initials** _____
**JB Initials** _____

**EXHIBIT "A"**

20.     This Agreement is not, and shall not in any way be construed as, an admission by the Company or any of the other Defendant Releasees of any liability to, or of any unlawful or otherwise wrongful acts against, the Plaintiff or any other person, and the Company specifically disclaims any liability to, or any unlawful or otherwise wrongful acts against, the Plaintiffs or any other person on the part of the Company or any of the other Defendant Releasees. This Agreement shall not be admissible or discoverable in any court or administrative proceeding other than as necessary in an action or proceeding for the express purpose of enforcing or construing this Agreement.

21.     Plaintiffs expressly represent, warrant, and acknowledge that the terms and provisions of this Agreement herein stated are the only consideration for signing this Agreement; that no other promise or agreement of any kind has been made by, to or with any person or entity whatsoever to cause the signing of this Agreement; and that, in executing this Agreement, they do not rely and has not relied upon any representation or statement made by any of the Defendant Releasees or by any of the Defendant Releasees' agents, representatives, or attorneys with regard to the subject matter, basis, or effect of this Agreement or otherwise.

22.     Plaintiffs represent and acknowledge that their signatures hereon show that they have decided, knowingly, voluntarily, freely and without coercion, after consulting with appropriate legal counsel, to execute this Agreement in return for the consideration paid by the Company, and that their signatures appearing hereon are genuine.

23.     Notwithstanding any other provision of this Agreement to the contrary, the Company and Plaintiffs agree that:

(a)     Plaintiff McDonald, in consideration of the promises made and the payments and benefits provided by the Company, as described herein (which Plaintiff McDonald agrees constitute consideration in addition to anything of value to which he is already entitled), agrees that this Agreement constitutes a knowing and voluntary waiver of all rights or claims he may have against the Defendant Releasees, or any of them, including, but not limited to, all rights or claims arising under the ADEA, including, but not limited to, all claims of age discrimination in employment and all claims of retaliation in violation of the ADEA.

Plaintiffs Hupalo and Bishop, Plaintiff, in consideration of the promises made and the payments and benefits provided by the Company, as described herein (which Plaintiffs Hupalo and Bishop agree constitute consideration in addition to anything of value to which they are already entitled), agree that this Agreement constitutes a knowing and voluntary waiver of all rights or claims they may have against the Defendant Releasees, or any of them.

**JM Initials** _JM_
**EH Initials** _____
Page 8 of 16              **JB Initials** _____

**EXHIBIT "A"**

(b)     By entering into this Agreement, the parties do not waive rights or claims that may arise after the date this Agreement is executed.

(c)     This Agreement does not affect the rights and responsibilities of the U.S. Equal Employment Opportunity Commission (the "EEOC") or like agencies to enforce the ADEA and other laws, and will not affect or be used to interfere with Plaintiffs' protected right to file a charge or participate in an investigation or proceeding conducted by the EEOC or like agencies.  Plaintiffs further agree that they knowingly and voluntarily waives all rights or claims (that arose prior to their execution of this Agreement) that they may have against the Defendant Releasees, or any of them, to receive any benefit or remedial relief (including, but not limited to, reinstatement, back pay, front pay, damages, and attorneys' fees) as a consequence of any charge filed with the EEOC or like agencies, or of any litigation concerning any facts alleged in any such charge.

(d)     This Agreement will not affect or be used to interfere with Plaintiff McDonald's protected right to test in any court of competent jurisdiction, under the Older Workers Benefit Protection Act (or like statute or regulation), the validity of the waiver of rights set forth in Paragraph 7 (and its subparagraphs) of this Agreement.

(e)     For a period of seven (7) days following Plaintiff McDonald's execution of this Agreement, Plaintiff McDonald has the right to revoke his release of any claims arising under the ADEA set forth in this Agreement by written notice delivered within such period to the Company's attorneys as set forth in Paragraph 26(a) below.

(f)     Plaintiffs and the Company further agree and acknowledge that Plaintiff McDonald's release of any claims arising under the ADEA set forth in this Agreement will not become effective or enforceable until the eighth (8th) day after its execution by Plaintiff McDonald; and that in the event Plaintiff McDonald revokes his release of any claims arising under the ADEA set forth in this Agreement prior to said eighth (8th) day, his release of any claims arising under the ADEA set forth in this Agreement  will automatically be deemed null and void.  Plaintiff McDonald's revocation of his release of any claims arising under the ADEA set forth in this Agreement will not revoke and has no effect on the validity and enforceability of the remainder of this Agreement and the remainder of this Agreement, as to all Plaintiffs, shall remain in full force and effect.

(g)     Plaintiff McDonald's acceptance of the monies or other consideration paid by the Company, as described herein, at any time more than seven (7) days after Plaintiff McDonald has executed this Agreement, will constitute an admission by Plaintiff McDonald that he has not revoked his release of any claims arising under the ADEA set forth in this Agreement during the revocation period, and that his release of any claims arising under the ADEA set forth in this Agreement has become fully effective and enforceable.

**JM Initials** _JM_
**EH Initials** _____

**JB Initials** _____

**EXHIBIT "A"**

(h)    The Company hereby advise and urge Plaintiffs in writing to consult with an attorney prior to executing this Agreement.

(i)    Plaintiff McDonald represents, warrants and acknowledges that the Company gave him a period of twenty-one (21) days in which to consider this Agreement before executing it.  If Plaintiff McDonald executes this Agreement at any time prior to the end of such twenty-one (21) day period, such early execution was a knowing and voluntary waiver of his right to consider this Agreement for twenty-one (21) days, and was due to his belief that he had ample time in which to consider and understand this Agreement, and to review it with an attorney.

24.    This Agreement may be executed in counterparts, each of which shall be deemed an original, and the counterparts shall together constitute one and the same instrument, notwithstanding that the parties hereto may not be signatories to the original or the same counterpart.  The parties agree and acknowledge that a photocopy, facsimile copy or email copy of an executed signature or initialed page may be used in place of an original executed signature or initialed page for any purpose.

25.    Any notice, correspondence, payment or other communication contemplated by or connected with this Agreement shall be directed as follows:

(a)    <u>If to the Company</u>:

Robin I. Frank, Esq.
Shapiro, Blasi, Wasserman & Hermann, P.A.
7777 Glades Road, Suite 400
Boca Raton, Florida 33434
Telephone:    (561) 477-7800
Facsimile:     (561) 477-7722
E-mail:         rifrank@sbwlawfirm.com

(b)    <u>If to the Plaintiffs</u>:

David Markel, Esq.
The Markel Law Firm
777 Brickell Ave., Suite 500
Miami, FL 33131
Tel:    (305) 458-1282
Fax:    (800) 407-1718
E-mail:    David.Markel@markel-law.com

27.    The parties agree and stipulate to the entry of an order approving this Settlement Agreement and dismissing the Civil Action with prejudice, and they agree to

**JM Initials** _____
**EH Initials** _____
**JB Initials** _____

Page 10 of 16

**EXHIBIT "A"**

request that the District Court retain jurisdiction to enforce the terms of this Settlement Agreement, should such enforcement be necessary.

28.   **PLAINTIFFS EXPRESSLY REPRESENT AND WARRANT THAT THEY (a) HAVE CAREFULLY READ THIS AGREEMENT OR HAD IT READ TO THEM; (b) FULLY UNDERSTAND THE TERMS, CONDITIONS, AND SIGNIFICANCE OF THIS AGREEMENT; (c) HAVE HAD AMPLE TIME TO CONSIDER AND NEGOTIATE THIS AGREEMENT; (d) HAVE HAD A FULL OPPORTUNITY TO REVIEW THIS AGREEMENT WITH THEIR ATTORNEY, DANIEL FELDMAN, ESQ., AND HAVE DONE SO; AND (e) HAVE EXECUTED THIS AGREEMENT VOLUNTARILY, KNOWINGLY, AND WITH THE ADVICE OF THEIR ATTORNEY.**

US CHUTES LLC                                    US CHUTES, CORP

By: _____        By: _____
    Manfred John Weber, Jr., as Manager        Manfred John Weber, Jr., as President

Dated: _____     Dated: _____

JOHN WEBER                                       JOSHUA BISHOP

By: _____        By: _____
    John Weber                                   Joshua Bishop

Dated: _____     Dated: _____

JEFFREY McDONALD                                 ELKE HUPALO

By: _Jeffrey McDonald_             By: _____
    Jeffrey McDonald                             Elke Hupalo

Dated: _6/7/16_                     Dated: _____


JM Initials _____
EH Initials _____
JB Initials _____

**EXHIBIT "A"**

EXHIBIT "A"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:15-cv-80667-RLR (Rosenberg/Hopkins)

JEFFREY McDONALD, ELKE HUPALO,
JOSHUA BISHOP, and all others similarly
situated under 29 U.S.C. 216(b),

        Plaintiffs,

v.

US CHUTES LLC, US CHUTES, CORP.,
and JOHN WEBER a/k/a MANFRED JOHN
WEBER, JR.,

        Defendants.

_____/

### JOINT MOTION TO REVIEW AND APPROVE FLSA SETTLEMENT AND DISMISS ACTION WITH PREJUDICE

Plaintiffs and Defendants, by and through their respective undersigned counsel, hereby jointly move the Court to review and approve their settlement and dismiss this action with prejudice, as follows:

1.    Plaintiffs' complaint alleges that Defendants violated the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* ("FLSA"), by failing to pay them alleged unpaid overtime compensation.  Defendants vigorously deny any wrongdoing under the FLSA, and further deny that Plaintiffs are entitled to any relief whatsoever.  The parties agree that there is a bona fide, good faith dispute as to both liability and damages regarding Plaintiffs' claims.

**JM Initials** _____
**EH Initials** _____
**JB Initials** _____

Page 12 of 16

**EXHIBIT "A"**

2.      To avoid the costs and uncertainty of further litigation, the parties have negotiated a settlement of this matter.  Pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th  Cir. 1982), claims for back wages arising under the FLSA may be settled or compromised with the approval of the district court (or under the supervision of the U.S. Department of Labor).  The parties request that the Court review and approve their settlement and dismiss this action with prejudice.  The parties further request that the Court reserve jurisdiction to enforce the terms of the settlement, should such enforcement be necessary.

3.      All parties are represented by counsel in this action, and all parties and their respective counsel agree and stipulate that the settlement represents a fair, reasonable, good faith and arms-length compromise of Plaintiff's claims.

4.      Attached hereto as Exhibit "A" is a copy of the parties' Settlement Agreement.

5.      Attached hereto as Exhibit "B" is an Affidavit as to Attorney's Fees and Costs, along with a ledger of the fees and costs, incurred by Plaintiffs' counsel.

WHEREFORE, Plaintiffs and Defendants jointly request that the Court enter an order (a) approving the parties' settlement; (b) dismissing this action with prejudice; and (c) reserving jurisdiction to enforce the terms of the settlement, should such enforcement be necessary.  A proposed order is provided herewith.

Respectfully submitted on June ___, 2016.

**JM Initials** ___
**EH Initials** ___
**JB Initials** ___

**EXHIBIT "A"**

s/ Robin I. Frank
ROBIN I. FRANK, ESQ.
Fla. Bar No. 0649619
E-mail: rifrank@sbwlawfirm.com
Shapiro, Blasi, Wasserman & Gora, P.A.
7777 Glades Road, Suite 400
Boca Raton, FL  33434
Telephone:   (561) 477-7800
Facsimile:   (561) 477-7722
Attorneys for Defendants

s/ David Markel          [1]
DAVID MARKEL, ESQ.
Fla. Bar No. 78306
E-mail: David.Markel@markel-law.com
The Markel Law Firm
777 Brickell Avenue Suite 500
Miami, Florida 33131
Tel: (305) 458-1282
Fax: (800)-407-1718
Attorneys for Plaintiffs

---

[1]     Prior to filing this Joint Motion, counsel for Plaintiff authorized his e-signature to and
the filing of this Joint Motion.

JM Initials _____
EH Initials _____
JB Initials _____

**EXHIBIT "A"**

Exhibit "B"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:15-cv-80667-RLR (Rosenberg/Hopkins)

JEFFREY McDONALD, ELKE HUPALO,
JOSHUA BISHOP, and all others similarly
situated under 29 U.S.C. 216(b),

        Plaintiffs,

v.

US CHUTES LLC, US CHUTES, CORP.,
and JOHN WEBER a/k/a MANFRED JOHN
WEBER, JR.,

        Defendants.

_____/

**ORDER APPROVING SETTLEMENT AND DISMISSING ACTION WITH PREJUDICE**

    **THIS CAUSE** is before the Court on the parties' Joint Motion to Review and

Approve FLSA Settlement and Dismiss Action with Prejudice. The Court has carefully

reviewed the Joint Motion, and the Settlement Agreement attached thereto, and is

otherwise fully advised in the premises. Accordingly, it is

    **ORDERED AND ADJUDGED** as follows:

1.    The parties' Joint Motion to Review and Approve FLSA Settlement and
       Dismiss Action with Prejudice is **GRANTED**.

2.    The Court hereby **APPROVES** the Settlement Agreement attached to the
       parties' Joint Motion.

3.    This case is **DISMISSED WITH PREJUDICE**.

**JM Initials** _JM_
**EH Initials** _____
    **JB Initials** _____

**EXHIBIT "A"**

4.      The Court retains jurisdiction to enforce the parties' Settlement

Agreement.

**DONE AND ORDERED** in Chambers, Fort Pierce, Florida this _____ day of June,

2016.

_____

Copies furnished to:                          ROBIN L. ROSENBERG
Counsel of Record                             UNITED STATES DISTRICT JUDGE

**JM Initials** _____
**EH Initials** _____
**JB Initials** _____

**EXHIBIT "A"**

## SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

This Settlement Agreement and Mutual General Release (the "Agreement") is made and entered into on the date(s) reflected below by and between US CHUTES LLC, US CHUTES, CORP., and JOHN WEBER a/k/a MANFRED JOHN WEBER, JR. (collectively, the "Company"), on the one hand, and JEFFREY MCDONALD ("McDonald"), ELKE HUPALO ("Hupalo") and JOSHUA BISHOP ("Bishop"), (collectively, the "Plaintiffs"), on the other hand.

WHEREAS:

A.      The Plaintiffs previously performed services for the Company.

B.      In or about May 2015, Plaintiffs filed a lawsuit against the Company in the United States District Court for the Southern District of Florida (the "District Court"), styled *Jeffrey McDonald, Elke Hupalo, Joshua Bishop, and all others similarly situated under 29 U.S.C. 216(b) v. US Chutes, LLC, US Chutes, Corp., and John Weber a/k/a Manfred John Weber, Jr.*, CASE NO. 9:15-cv-80667-RLR (Rosenberg/Hopkins) (the "Civil Action").

C.      The Plaintiffs claim that they are entitled to but did not receive from the Company certain compensation allegedly owed to them pursuant to the Fair Labor Standards Act of 1938, as amended (the "Alleged Compensation Amount").

D.      The Company denies that the Plaintiffs are entitled to receive the Alleged Compensation Amount or any part thereof.

E.      The Company denies each and every material allegation set forth in the Civil Action, and denies having committed any wrong or causing any injury to the Plaintiffs.

F.      There are bona fide disputes between the Company and the Plaintiffs as to whether the Plaintiffs are entitled to receive the Alleged Compensation Amount or any part thereof, including whether McDonald and Bishop were even employees of the Company.

G.      In order to avoid the further costs and burdens of litigation, the Company and the Plaintiffs now desire to settle fully and finally any and all differences between them, including, but not limited to, those differences embodied in the Civil Action.

NOW, THEREFORE, the Company and the Plaintiffs agree as follows:

1.      The foregoing recitals constitute part of this Agreement.

2.      In consideration of this Settlement Agreement and the mutual promises set forth herein, and in full, final and complete settlement, the Company shall cause to be paid

JM Initials _____
EH Initials __EH____
JB Initials _____

**EXHIBIT "A"**

to the Plaintiffs and their attorneys, The Markel Law Firm ("Markel"), the total gross amount of Eleven Thousand Dollars and No Cents ($11,000.00) (the "Settlement Amount"). Plaintiff McDonald shall receive the total gross amount of Five-Thousand Dollars ($5,000.00) for Plaintiff McDonald's alleged unpaid overtime compensation and liquidated damages ($2,500.00 is for alleged unpaid overtime compensation and $2,500.00 is for alleged liquidated damages), Plaintiff Hupalo shall receive the total gross amount of One-Thousand Seven Hundred Fifty Dollars ($1,750.00) for Plaintiff Hupalo's alleged unpaid overtime compensation and liquidated damages ($875.00 is for alleged unpaid overtime compensation and $875.00 is for alleged liquidated damages), Plaintiff Bishop shall receive the total gross amount of One-Thousand Two Hundred Fifty Dollars ($1,250.00) for Plaintiff Bishop's alleged unpaid overtime compensation and liquidated damages ($625.00 is for alleged unpaid overtime compensation and $625.00 is for alleged liquidated damages), and Markel shall receive the total gross amount of Three-Thousand Dollars ($3,000.00) ($2,155.00 for attorney's fees and $845.00 for costs and additional consideration for this Agreement). The Settlement Amount shall be paid in five (5) monthly installments, as follows:

a.  Within ten (10) days of the District Court approving this Agreement and dismissing the Civil Action with prejudice:

(i)  a check made payable to the trust account of The Markel Law Firm in the gross and net sum of Three Thousand Dollars and No Cents ($3,000.00), with no deductions or withholdings.

b.  Within thirty (30) days of the check set forth in paragraph 2(a)(i):

(i)  a check made payable to the trust account of The Markel Law Firm in the gross and net sum of Three Thousand Dollars and No Cents ($2,000.00), with no deductions or withholdings.

c.  Within thirty (30) days of the check set forth in paragraph 2(b)(i):

(i)  a check made payable to the trust account of The Markel Law Firm in the gross and net sum of Three Thousand Dollars and No Cents ($2,000.00), with no deductions or withholdings.

d.  Within thirty (30) days of the check set forth in paragraph 2(c)(i):

(i)  a check made payable to the trust account of The Markel Law Firm in the gross and net sum of Three Thousand Dollars and No Cents ($2,000.00), with no deductions or withholdings.

e.  Within thirty (30) days of the check set forth in paragraph 2(d)(i):

JM Initials _____
EH Initials __EH__
JB Initials _____

**EXHIBIT "A"**

(i)     a check made payable to the trust account of The Markel Law Firm in the gross and net sum of Three Thousand Dollars and No Cents ($2,000.00), with no deductions or withholdings.

f.      The payments set forth above for Plaintiffs' amounts will be reported by the Company for tax purposes on form 1099 to be issued to Plaintiffs and the payments set forth above attributable to attorney's fees and costs will be reported by the Company for tax purposes on form 1099 to be issued to Plaintiffs' attorney.  Plaintiffs agree and understand that no taxes shall be withheld from these payments.  The Plaintiffs further represent, warrant, and acknowledge that the payments to Plaintiffs' attorney set forth above is entirely at their instigation and request both as to fact and amount, and for their convenience, and that the Company is not in any manner whatsoever involved in their request that such payment be so directed.  The Plaintiffs agree and acknowledge that, between them, as allocated pursuant to applicable law, they will be solely responsible for the payment of any and all taxes with respect to the payments referenced in this Paragraph, and each represents and warrants that such taxes will be timely and fully paid.

g.      In the event that the Company fails to make timely payment of any sums due under this Agreement, the Company shall be deemed in default of this Agreement.  In such event, Plaintiffs shall provide the Company written notice of its default via email and U.S. Mail to Robin I. Frank, Esq., Shapiro, Blasi, Wasserman & Hermann, P.A., 7777 Glades Road, Suite 400, Boca Raton, FL 33434; (561) 477-7722; rifrank@sbwlawfirm.com, and via email and Certified Mail, Return Receipt Requested, to John Weber, U.S. Chutes, Corp., 751 Park of Commerce Drive, Boca Raton, FL 33487; jweber@uschutes.com,and provide the Company ten (10) days from the date of the Company's counsel's receipt or John Weber's receipt, whichever is later, of the notice to correct such default.  If the Company fails to cure such default within said time period, Plaintiffs shall be entitled to apply for the entry of a default judgment against the Defendants, jointly and severally, for the total amount of $15,000.00, less any payments made hereunder.

3.      The Plaintiffs and the Company hereby authorize and instruct their respective attorneys to submit the Settlement Agreement to the District Court.  The Plaintiffs and Plaintiffs' counsel further agree to take whatever other actions are necessary to effectuate the dismissal with prejudice of the Civil Action, including, but not limited to, filing additional motions should the District Court disapprove the Settlement Agreement.

4.      Plaintiffs agree and acknowledge that they shall not in the future provide any services to, or be employed by, the Company.  Plaintiffs further agree and acknowledge that they will not knowingly accept, apply for, or otherwise seek employment with, or otherwise seek to perform services for, the Company, or any of its subsidiaries, divisions, related companies, or controlling shareholders (direct or indirect) at any time.  In the event that Plaintiffs are inadvertently employed by any of the foregoing (including as an independent contractor), they will promptly notify the employing person or entity of their

JM Initials _____
EH Initials __EH____
JB Initials _____

**EXHIBIT "A"**

obligation to resign from such employment, and the employing entity shall have the right to require their resignation forthwith.

5.      Plaintiffs represent, warrant, and acknowledge that the Company does not owe them any wages, commissions, bonuses, vacation pay, or other compensation or payments of any kind or nature beyond what is set forth in this Agreement.  Plaintiffs agree and understand that the amounts paid by or on behalf of the Company pursuant to this Agreement are being paid strictly and solely for purposes of settlement and that the Company expressly denies that the Plaintiffs are entitled to receive the Alleged Compensation Amount or any part thereof.

6.      Notwithstanding that the Company expressly denies that the Plaintiffs are entitled to receive the alleged Compensation Amount or any part thereof, Plaintiffs represent, warrant, and agree that the amounts paid by or on behalf of the Company pursuant to this Agreement represent payment-in-full of (a) the Alleged Compensation Amount; and (b) any and all others amounts which the Plaintiffs sought or could have sought in the Civil Action, including but not limited to alleged unpaid wages, alleged liquidated damages, and costs and attorney's fees, including amounts pursuant to the Fair Labor Standards Act of 1938, as amended.

7.      Plaintiffs, in consideration of this Agreement and the mutual promises set forth herein, and for other good and valuable consideration received from or on behalf of the Company, receipt whereof is hereby acknowledged, hereby *release and forever discharge* the Company and the Company's parent companies, subsidiaries, divisions, affiliates, related companies, predecessors, successors, heirs, executors, administrators, assigns, shareholders (direct or indirect), directors, officers, employees, agents, and attorneys (and the shareholders (direct or indirect), directors, officers, employees, agents, and attorneys of such parent companies, subsidiaries, affiliates, and related companies), and all persons acting by, through, under, or in concert with any of them, and John Weber, individually, and his respective heirs, executors, administrators, successors, and assigns, successors, and assigns (the Company and the foregoing other persons and entities are hereinafter defined separately and collectively as the "Defendant Releasees"), from all actions, causes of action, debts, sums of money, accounts, covenants, contracts, agreements, promises, damages, judgments, claims, and demands whatsoever, *whether known or unknown*, either in law or equity, whether statutory or common law, whether federal, state, local, or otherwise, including, but not limited to, any claims related to, or arising out of any aspect of Plaintiffs' relationship or employment with the Company, any agreement concerning such employment or relationship, or the termination of such employment or relationship, including, but not limited to:

          (a)      any and all claims asserted, or which could have been asserted, in the Civil Action, including, but not limited to, any and all claims under the Fair Labor Standards Act of 1938, as amended;

**JM Initials** _____
**EH Initials** ___EH___
**JB Initials** _____

Page 4 of 16

**EXHIBIT "A"**

(b)  any and all claims of wrongful discharge or breach of contract, any and all claims for equitable estoppel, any and all claims for employee benefits, including, but not limited to, any and all claims under the Employee Retirement Income Security Act of 1974, as amended, and any and all claims of employment discrimination on any basis, including, but not limited to, any and all claims under Title VII of the Civil Rights Act of 1964, as amended, under the Age Discrimination in Employment Act of 1967, as amended (the "ADEA"), under the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended, under the Civil Rights Act of 1991, as amended, under the Americans with Disabilities Act of 1990, as amended, under the Immigration Reform and Control Act of 1986, as amended, under the Family and Medical Leave Act of 1993, as amended, under the Florida Civil Rights Act of 1992, as amended, under the Florida Equal Pay Law, as amended, under the Florida Wage Discrimination Law, as amended, and under the Florida Minimum Wage Law, as amended;

(c)  any and all claims under any other federal, state, or local wage and hour law, employment law, labor law, civil rights law, human rights law, or workers' compensation law;

(d)  any and all claims of slander, libel, defamation, invasion of privacy, intentional or negligent infliction of emotional distress, negligent misrepresentation, fraud, negligent hiring, supervision or retention, assault and battery, and prima facie tort; and

(e)  any and all claims for monetary recovery, including, but not limited to, back pay, front pay, liquidated, compensatory or punitive damages, attorneys' fees, experts' fees, disbursements, and costs;

which, against the Defendant Releasees, Plaintiffs or their respective heirs, executors, administrators, successors, and assigns ever had, now has, or hereafter can, will, or may have, for, upon, or by reason of any matter, cause, or thing whatsoever from the beginning of the world to the date Plaintiffs execute this Agreement.

8.  Plaintiffs understand and acknowledge that there may be facts or information which they do not know or suspect to exist in their favor at the time they execute this Agreement, and they agree that this Agreement is intended to and does extinguish any and all claims they might have based on such facts or information.

9.  Excepting only the Civil Action, Plaintiffs represent and warrant that they have never commenced or filed, and covenant and agree never to commence, file, aid, or in any way prosecute or cause to be commenced or prosecuted against the Defendant Releasees, or any of them, any action, charge, complaint, or other proceeding, whether administrative, judicial, legislative, or otherwise, including, but not limited to, any action or proceeding for attorneys' fees, experts' fees, disbursements, or costs, based upon or seeking relief on account of actions or failures to act by the Defendant Releasees, or any of them, which may have occurred or failed to occur before their execution of this Agreement.

**JM Initials** _____
**EH Initials** ___EH___
**JB Initials** _____

**EXHIBIT "A"**

10.    Plaintiffs represent and warrant that no other person is entitled to assert any claim based on or arising out of any alleged discriminatory, unlawful, wrongful, tortious, or other conduct against them by the Defendant Releasees, or any of them, including, but not limited to, any and all claims for attorneys' fees, experts' fees, or damages resulting as a consequence thereof, based upon or seeking relief on account of actions or failures to act by the Defendant Releasees which may have occurred or failed to occur before their execution of this Agreement.  Plaintiffs further represent and warrant that they have not assigned and will never assign any such claim, and that in the event any such claim is filed or prosecuted by any other person or entity, they will cooperate fully with the Defendant Releasees and will move immediately to withdraw their name and to disassociate themselves completely from any such claim, will request such person or entity to withdraw such claim with prejudice, and will not voluntarily cooperate with or testify on behalf of the person or entity prosecuting such claim.

11.    (a)    Plaintiffs acknowledge that maintaining the Company's good reputation in the community is of *paramount importance* to the Company.  Accordingly, Plaintiffs agree that they will not disparage or encourage or induce others to disparage the Company or any of the Defendant Releasees by any type of communication, whether verbally, in writing, through gesture or other non-verbal means (such as winks or nods of the head), or otherwise. This prohibition includes disparagement through any social media or apps, including but not limited to facebook, blogs, twitter, etc.

(b)    Plaintiffs agree, represent and warrant that they shall not at any point in the future (a) directly communicate with the Company, including but not limited to any officers, directors or administrative or managerial employees of the Company, and which also includes communications through any social media or apps, including but not limited to facebook, blogs, twitter, etc.; (b) visit the Company's offices, stores or places of operations; (c) step foot on any properties at which the Company is operating out of or at; (d) step foot on any customer's properties at which the Company is providing services and during the time that the Company is providing services to that customer.

12.    Plaintiffs acknowledge that if they materially breach this Agreement, breach the non-disparagement provisions of this Agreement and/or commence a suit, action, proceeding or complaint in contravention of this Agreement and waiver of claims, the Company shall be entitled to all remedies allowed in law or equity, including but not limited to the return of that portion of the liquidated damages payment paid to Plaintiffs pursuant to this Settlement Agreement.

13.    Excepting claims based upon representations, warranties, agreements, covenants, and promises made in or pursuant to this Agreement, including but not limited to the agreements set forth in Paragraphs 11 and 12 above, the Company, in consideration of this Agreement and the mutual promises set forth herein, and for other good and

**JM Initials** _____
**EH Initials** ___EH___
**JB Initials** _____

**EXHIBIT "A"**

valuable consideration received from or on behalf of the Plaintiffs, receipt whereof is hereby acknowledged, *release and forever discharge* the Plaintiffs and Plaintiffs' heirs, executors, administrators, successors, and assigns, from all actions, causes of action, debts, sums of money, accounts, covenants, contracts, agreements, promises, damages, judgments, claims, and demands whatsoever, *whether known or unknown*, either in law or equity, whether statutory or common law, whether federal, state, local, or otherwise, including, but not limited to, any claims related to, or arising out of any aspect of the Plaintiffs' employment or relationship with the Company, any agreement concerning such employment or relationship, or the termination of such employment or relationship, which, against the Plaintiffs, the Company ever had, now has or hereafter can, will, or may have, by reason of any matter or cause whatsoever from the beginning of the world to the date the Company executes this Agreement.

14.   Should any part, term, or provision of this Agreement be declared or determined by a court of competent jurisdiction to be illegal, invalid, or unenforceable, the validity of the remaining parts, terms, or provisions will not be affected thereby, and said illegal, invalid or unenforceable part, term, or provision will be deemed not to be a part of this Agreement.

15.   No payment made pursuant to this Agreement shall constitute or be considered "wages," "earnings" or "compensation" for any purpose under any retirement plan, welfare plan, stock purchase plan, bonus plan, employee stock ownership plan or vacation policy of the Company.

16.   In the event that there is any litigation (including appellate proceedings or arbitration) arising out of or relating to this Agreement, the prevailing party shall recover, in addition to any and all other relief, his or its attorneys' fees and expenses.

17.   This Agreement is to be interpreted, construed, and enforced pursuant to the substantive laws of the State of Florida and, where applicable, federal law.  Any action or proceeding relating to or arising out of this Agreement shall be brought in the District Court or in a court of competent jurisdiction in Palm Beach County, Florida.

18.   Should any term or provision of this Agreement require interpretation or construction, it is agreed by the parties that the court or other entity interpreting or construing this document shall not apply any presumption that the terms and provisions of this Agreement shall be more strictly construed against any particular party, it being agreed that all parties and their respective attorneys have fully participated in the preparation of all terms and provisions of this Agreement.

19.   This Agreement sets forth the entire agreement between the parties hereto, fully supersedes any and all prior agreements or understandings between the parties regarding the subject matter hereof, and may not be modified orally.

**JM Initials** _____
**EH Initials** __EH__
**JB Initials** _____

**EXHIBIT "A"**

20.     This Agreement is not, and shall not in any way be construed as, an admission by the Company or any of the other Defendant Releasees of any liability to, or of any unlawful or otherwise wrongful acts against, the Plaintiff or any other person, and the Company specifically disclaims any liability to, or any unlawful or otherwise wrongful acts against, the Plaintiffs or any other person on the part of the Company or any of the other Defendant Releasees.  This Agreement shall not be admissible or discoverable in any court or administrative proceeding other than as necessary in an action or proceeding for the express purpose of enforcing or construing this Agreement.

21.     Plaintiffs expressly represent, warrant, and acknowledge that the terms and provisions of this Agreement herein stated are the only consideration for signing this Agreement; that no other promise or agreement of any kind has been made by, to or with any person or entity whatsoever to cause the signing of this Agreement; and that, in executing this Agreement, they do not rely and has not relied upon any representation or statement made by any of the Defendant Releasees or by any of the Defendant Releasees' agents, representatives, or attorneys with regard to the subject matter, basis, or effect of this Agreement or otherwise.

22.     Plaintiffs represent and acknowledge that their signatures hereon show that they have decided, knowingly, voluntarily, freely and without coercion, after consulting with appropriate legal counsel, to execute this Agreement in return for the consideration paid by the Company, and that their signatures appearing hereon are genuine.

23.     Notwithstanding any other provision of this Agreement to the contrary, the Company and Plaintiffs agree that:

(a)     Plaintiff McDonald, in consideration of the promises made and the payments and benefits provided by the Company, as described herein (which Plaintiff McDonald agrees constitute consideration in addition to anything of value to which he is already entitled), agrees that this Agreement constitutes a knowing and voluntary waiver of all rights or claims he may have against the Defendant Releasees, or any of them, including, but not limited to, all rights or claims arising under the ADEA, including, but not limited to, all claims of age discrimination in employment and all claims of retaliation in violation of the ADEA.

Plaintiffs Hupalo and Bishop, Plaintiff, in consideration of the promises made and the payments and benefits provided by the Company, as described herein (which Plaintiffs Hupalo and Bishop agree constitute consideration in addition to anything of value to which they are already entitled), agree that this Agreement constitutes a knowing and voluntary waiver of all rights or claims they may have against the Defendant Releasees, or any of them.

**JM Initials** _____
**EH Initials** __EH__
**JB Initials** _____

Page 8 of 16

**EXHIBIT "A"**

(b)     By entering into this Agreement, the parties do not waive rights or claims that may arise after the date this Agreement is executed.

(c)     This Agreement does not affect the rights and responsibilities of the U.S. Equal Employment Opportunity Commission (the "EEOC") or like agencies to enforce the ADEA and other laws, and will not affect or be used to interfere with Plaintiffs' protected right to file a charge or participate in an investigation or proceeding conducted by the EEOC or like agencies. Plaintiffs further agree that they knowingly and voluntarily waives all rights or claims (that arose prior to their execution of this Agreement) that they may have against the Defendant Releasees, or any of them, to receive any benefit or remedial relief (including, but not limited to, reinstatement, back pay, front pay, damages, and attorneys' fees) as a consequence of any charge filed with the EEOC or like agencies, or of any litigation concerning any facts alleged in any such charge.

(d)     This Agreement will not affect or be used to interfere with Plaintiff McDonald's protected right to test in any court of competent jurisdiction, under the Older Workers Benefit Protection Act (or like statute or regulation), the validity of the waiver of rights set forth in Paragraph 7 (and its subparagraphs) of this Agreement.

(e)     For a period of seven (7) days following Plaintiff McDonald's execution of this Agreement, Plaintiff McDonald has the right to revoke his release of any claims arising under the ADEA set forth in this Agreement by written notice delivered within such period to the Company's attorneys as set forth in Paragraph 26(a) below.

(f)     Plaintiffs and the Company further agree and acknowledge that Plaintiff McDonald's release of any claims arising under the ADEA set forth in this Agreement will not become effective or enforceable until the eighth (8th) day after its execution by Plaintiff McDonald; and that in the event Plaintiff McDonald revokes his release of any claims arising under the ADEA set forth in this Agreement prior to said eighth (8th) day, his release of any claims arising under the ADEA set forth in this Agreement  will automatically be deemed null and void. Plaintiff McDonald's revocation of his release of any claims arising under the ADEA set forth in this Agreement will not revoke and has no effect on the validity and enforceability of the remainder of this Agreement and the remainder of this Agreement, as to all Plaintiffs, shall remain in full force and effect.

(g)     Plaintiff McDonald's acceptance of the monies or other consideration paid by the Company, as described herein, at any time more than seven (7) days after Plaintiff McDonald has executed this Agreement, will constitute an admission by Plaintiff McDonald that he has not revoked his release of any claims arising under the ADEA set forth in this Agreement during the revocation period, and that his release of any claims arising under the ADEA set forth in this Agreement has become fully effective and enforceable.

**JM Initials** _____
**EH Initials** \_EH\_\_\_\_
Page 9 of 16                          **JB Initials** _____

**EXHIBIT "A"**

(h)    The Company hereby advise and urge Plaintiffs in writing to consult with an attorney prior to executing this Agreement.

(i)    Plaintiff McDonald represents, warrants and acknowledges that the Company gave him a period of twenty-one (21) days in which to consider this Agreement before executing it. If Plaintiff McDonald executes this Agreement at any time prior to the end of such twenty-one (21) day period, such early execution was a knowing and voluntary waiver of his right to consider this Agreement for twenty-one (21) days, and was due to his belief that he had ample time in which to consider and understand this Agreement, and to review it with an attorney.

24.    This Agreement may be executed in counterparts, each of which shall be deemed an original, and the counterparts shall together constitute one and the same instrument, notwithstanding that the parties hereto may not be signatories to the original or the same counterpart. The parties agree and acknowledge that a photocopy, facsimile copy or email copy of an executed signature or initialed page may be used in place of an original executed signature or initialed page for any purpose.

25.    Any notice, correspondence, payment or other communication contemplated by or connected with this Agreement shall be directed as follows:

(a)    <u>If to the Company</u>:

Robin I. Frank, Esq.
Shapiro, Blasi, Wasserman & Hermann, P.A.
7777 Glades Road, Suite 400
Boca Raton, Florida 33434
Telephone:    (561) 477-7800
Facsimile:    (561) 477-7722
E-mail:       rifrank@sbwlawfirm.com

(b)    <u>If to the Plaintiffs</u>:

David Markel, Esq.
The Markel Law Firm
777 Brickell Ave., Suite 500
Miami, FL 33131
Tel:    (305) 458-1282
Fax:    (800) 407-1718
E-mail:    David.Markel@markel-law.com

27.    The parties agree and stipulate to the entry of an order approving this Settlement Agreement and dismissing the Civil Action with prejudice, and they agree to

JM Initials _____
EH Initials ___EH___
JB Initials _____

Page 10 of 16

**EXHIBIT "A"**

request that the District Court retain jurisdiction to enforce the terms of this Settlement Agreement, should such enforcement be necessary.

28. **PLAINTIFFS EXPRESSLY REPRESENT AND WARRANT THAT THEY (a) HAVE CAREFULLY READ THIS AGREEMENT OR HAD IT READ TO THEM; (b) FULLY UNDERSTAND THE TERMS, CONDITIONS, AND SIGNIFICANCE OF THIS AGREEMENT; (c) HAVE HAD AMPLE TIME TO CONSIDER AND NEGOTIATE THIS AGREEMENT; (d) HAVE HAD A FULL OPPORTUNITY TO REVIEW THIS AGREEMENT WITH THEIR ATTORNEY, DANIEL FELDMAN, ESQ., AND HAVE DONE SO; AND (e) HAVE EXECUTED THIS AGREEMENT VOLUNTARILY, KNOWINGLY, AND WITH THE ADVICE OF THEIR ATTORNEY.**

US CHUTES LLC                                US CHUTES, CORP

By: _____        By: _____
    Manfred John Weber, Jr., as Manager        Manfred John Weber, Jr., as President

Dated: _____        Dated: _____

JOHN WEBER                                   JOSHUA BISHOP

By: _____        By: _____
    John Weber                                        Joshua Bishop

Dated: _____        Dated: _____

JEFFREY McDONALD                        ELKE HUPALO

By: _____        By: *Elke Hupalo*_____
    Jeffrey McDonald                              Elke Hupalo

Dated: _____        Dated: __06/07/2016_____

**JM Initials** _____
**EH Initials** __EH__
**JB Initials** _____

**EXHIBIT "A"**

**EXHIBIT "A"**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:15-cv-80667-RLR (Rosenberg/Hopkins)

JEFFREY McDONALD, ELKE HUPALO,
JOSHUA BISHOP, and all others similarly
situated under 29 U.S.C. 216(b),

       Plaintiffs,

v.

US CHUTES LLC, US CHUTES, CORP.,
and JOHN WEBER a/k/a MANFRED JOHN
WEBER, JR.,

       Defendants.

_____/

**JOINT MOTION TO REVIEW AND APPROVE FLSA SETTLEMENT**
**AND DISMISS ACTION WITH PREJUDICE**

Plaintiffs and Defendants, by and through their respective undersigned counsel,

hereby jointly move the Court to review and approve their settlement and dismiss this

action with prejudice, as follows:

1.     Plaintiffs' complaint alleges that Defendants violated the Fair Labor

Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* ("FLSA"), by failing to pay

them alleged unpaid overtime compensation.  Defendants vigorously deny any

wrongdoing under the FLSA, and further deny that Plaintiffs are entitled to any relief

whatsoever.  The parties agree that there is a bona fide, good faith dispute as to both

liability and damages regarding Plaintiffs' claims.

**JM Initials** _____
**EH Initials** __EH__
**JB Initials** _____

Page 12 of 16

**EXHIBIT "A"**

2.	To avoid the costs and uncertainty of further litigation, the parties have negotiated a settlement of this matter.  Pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th  Cir. 1982), claims for back wages arising under the FLSA may be settled or compromised with the approval of the district court (or under the supervision of the U.S. Department of Labor).  The parties request that the Court review and approve their settlement and dismiss this action with prejudice.  The parties further request that the Court reserve jurisdiction to enforce the terms of the settlement, should such enforcement be necessary.

3.	All parties are represented by counsel in this action, and all parties and their respective counsel agree and stipulate that the settlement represents a fair, reasonable, good faith and arms-length compromise of Plaintiff's claims.

4.	Attached hereto as Exhibit "A" is a copy of the parties' Settlement Agreement.

5.	Attached hereto as Exhibit "B" is an Affidavit as to Attorney's Fees and Costs, along with a ledger of the fees and costs, incurred by Plaintiffs' counsel.

WHEREFORE, Plaintiffs and Defendants jointly request that the Court enter an order (a) approving the parties' settlement; (b) dismissing this action with prejudice; and (c) reserving jurisdiction to enforce the terms of the settlement, should such enforcement be necessary.  A proposed order is provided herewith.

Respectfully submitted on June ___, 2016.

**JM Initials** _____
**EH Initials** ___EH___
**JB Initials** _____

**EXHIBIT "A"**

s/ Robin I. Frank
ROBIN I. FRANK, ESQ.
Fla. Bar No. 0649619
E-mail: rifrank@sbwlawfirm.com
Shapiro, Blasi, Wasserman & Gora, P.A.
7777 Glades Road, Suite 400
Boca Raton, FL  33434
Telephone:   (561) 477-7800
Facsimile:    (561) 477-7722
Attorneys for Defendants

s/ David Markel                    [1]
DAVID MARKEL, ESQ.
Fla. Bar No. 78306
E-mail: David.Markel@markel-law.com
The Markel Law Firm
777 Brickell Avenue Suite 500
Miami, Florida 33131
Tel: (305) 458-1282
Fax: (800)-407-1718
Attorneys for Plaintiffs

---

[1]      Prior to filing this Joint Motion, counsel for Plaintiff authorized his e-signature to and the filing of this Joint Motion.

JM Initials _____
EH Initials   EH
JB Initials _____

**EXHIBIT "A"**

**Exhibit "B"**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:15-cv-80667-RLR (Rosenberg/Hopkins)

JEFFREY McDONALD, ELKE HUPALO,
JOSHUA BISHOP, and all others similarly
situated under 29 U.S.C. 216(b),

      Plaintiffs,

v.

US CHUTES LLC, US CHUTES, CORP.,
and JOHN WEBER a/k/a MANFRED JOHN
WEBER, JR.,

      Defendants.

_____/

**ORDER APPROVING SETTLEMENT AND DISMISSING ACTION WITH PREJUDICE**

    **THIS CAUSE** is before the Court on the parties' Joint Motion to Review and

Approve FLSA Settlement and Dismiss Action with Prejudice. The Court has carefully

reviewed the Joint Motion, and the Settlement Agreement attached thereto, and is

otherwise fully advised in the premises. Accordingly, it is

    **ORDERED AND ADJUDGED** as follows:

1.    The parties' Joint Motion to Review and Approve FLSA Settlement and
    Dismiss Action with Prejudice is **GRANTED**.

2.    The Court hereby **APPROVES** the Settlement Agreement attached to the
    parties' Joint Motion.

3.    This case is **DISMISSED WITH PREJUDICE**.

**JM Initials** _____
**EH Initials** ___EH___
**JB Initials** _____

Page 15 of 16

**EXHIBIT "A"**

4.      The Court retains jurisdiction to enforce the parties' Settlement

Agreement.

**DONE AND ORDERED** in Chambers, Fort Pierce, Florida this ____ day of June,

2016.

_____

Copies furnished to:                    ROBIN L. ROSENBERG
Counsel of Record                       UNITED STATES DISTRICT JUDGE

**JM Initials** _____
**EH Initials** ___EH___
**JB Initials** _____

**EXHIBIT "A"**

## SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

This Settlement Agreement and Mutual General Release (the "Agreement") is made and entered into on the date(s) reflected below by and between US CHUTES LLC, US CHUTES, CORP., and JOHN WEBER a/k/a MANFRED JOHN WEBER, JR. (collectively, the "Company"), on the one hand, and JEFFREY MCDONALD ("McDonald"), ELKE HUPALO ("Hupalo") and JOSHUA BISHOP ("Bishop"), (collectively, the "Plaintiffs"), on the other hand.

WHEREAS:

A.      The Plaintiffs previously performed services for the Company.

B.      In or about May 2015, Plaintiffs filed a lawsuit against the Company in the United States District Court for the Southern District of Florida (the "District Court"), styled *Jeffrey McDonald, Elke Hupalo, Joshua Bishop, and all others similarly situated under 29 U.S.C. 216(b) v. US Chutes, LLC, US Chutes, Corp., and John Weber a/k/a Manfred John Weber, Jr.*, CASE NO. 9:15-cv-80667-RLR (Rosenberg/Hopkins) (the "Civil Action").

C.      The Plaintiffs claim that they are entitled to but did not receive from the Company certain compensation allegedly owed to them pursuant to the Fair Labor Standards Act of 1938, as amended (the "Alleged Compensation Amount").

D.      The Company denies that the Plaintiffs are entitled to receive the Alleged Compensation Amount or any part thereof.

E.      The Company denies each and every material allegation set forth in the Civil Action, and denies having committed any wrong or causing any injury to the Plaintiffs.

F.      There are bona fide disputes between the Company and the Plaintiffs as to whether the Plaintiffs are entitled to receive the Alleged Compensation Amount or any part thereof, including whether McDonald and Bishop were even employees of the Company.

G.      In order to avoid the further costs and burdens of litigation, the Company and the Plaintiffs now desire to settle fully and finally any and all differences between them, including, but not limited to, those differences embodied in the Civil Action.

NOW, THEREFORE, the Company and the Plaintiffs agree as follows:

1.      The foregoing recitals constitute part of this Agreement.

2.      In consideration of this Settlement Agreement and the mutual promises set forth herein, and in full, final and complete settlement, the Company shall cause to be paid

JM Initials _____
EH Initials _____
JB Initials _____

**EXHIBIT "A"**

to the Plaintiffs and their attorneys, The Markel Law Firm ("Markel"), the total gross amount of Eleven Thousand Dollars and No Cents ($11,000.00) (the "Settlement Amount"). Plaintiff McDonald shall receive the total gross amount of Five-Thousand Dollars ($5,000.00) for Plaintiff McDonald's alleged unpaid overtime compensation and liquidated damages ($2,500.00 is for alleged unpaid overtime compensation and $2,500.00 is for alleged liquidated damages), Plaintiff Hupalo shall receive the total gross amount of One-Thousand Seven Hundred Fifty Dollars ($1,750.00) for Plaintiff Hupalo's alleged unpaid overtime compensation and liquidated damages ($875.00 is for alleged unpaid overtime compensation and $875.00 is for alleged liquidated damages), Plaintiff Bishop shall receive the total gross amount of One-Thousand Two Hundred Fifty Dollars ($1,250.00) for Plaintiff Bishop's alleged unpaid overtime compensation and liquidated damages ($625.00 is for alleged unpaid overtime compensation and $625.00 is for alleged liquidated damages), and Markel shall receive the total gross amount of Three-Thousand Dollars ($3,000.00) ($2,155.00 for attorney's fees and $845.00 for costs and additional consideration for this Agreement). The Settlement Amount shall be paid in five (5) monthly installments, as follows:

    a.    Within ten (10) days of the District Court approving this Agreement and dismissing the Civil Action with prejudice:

        (i)    a check made payable to the trust account of The Markel Law Firm in the gross and net sum of Three Thousand Dollars and No Cents ($3,000.00), with no deductions or withholdings.

    b.    Within thirty (30) days of the check set forth in paragraph 2(a)(i):

        (i)    a check made payable to the trust account of The Markel Law Firm in the gross and net sum of Three Thousand Dollars and No Cents ($2,000.00), with no deductions or withholdings.

    c.    Within thirty (30) days of the check set forth in paragraph 2(b)(i):

        (i)    a check made payable to the trust account of The Markel Law Firm in the gross and net sum of Three Thousand Dollars and No Cents ($2,000.00), with no deductions or withholdings.

    d.    Within thirty (30) days of the check set forth in paragraph 2(c)(i):

        (i)    a check made payable to the trust account of The Markel Law Firm in the gross and net sum of Three Thousand Dollars and No Cents ($2,000.00), with no deductions or withholdings.

    e.    Within thirty (30) days of the check set forth in paragraph 2(d)(i):

JM Initials _____
EH Initials _____
JB Initials _JB_

**EXHIBIT "A"**

(i)    a check made payable to the trust account of The Markel Law Firm in the gross and net sum of Three Thousand Dollars and No Cents ($2,000.00), with no deductions or withholdings.

f.    The payments set forth above for Plaintiffs' amounts will be reported by the Company for tax purposes on form 1099 to be issued to Plaintiffs and the payments set forth above attributable to attorney's fees and costs will be reported by the Company for tax purposes on form 1099 to be issued to Plaintiffs' attorney.   Plaintiffs agree and understand that no taxes shall be withheld from these payments.   The Plaintiffs further represent, warrant, and acknowledge that the payments to Plaintiffs' attorney set forth above is entirely at their instigation and request both as to fact and amount, and for their convenience, and that the Company is not in any manner whatsoever involved in their request that such payment be so directed.   The Plaintiffs agree and acknowledge that, between them, as allocated pursuant to applicable law, they will be solely responsible for the payment of any and all taxes with respect to the payments referenced in this Paragraph, and each represents and warrants that such taxes will be timely and fully paid.

g.    In the event that the Company fails to make timely payment of any sums due under this Agreement, the Company shall be deemed in default of this Agreement.  In such event, Plaintiffs shall provide the Company written notice of its default via email and U.S. Mail to Robin I. Frank, Esq., Shapiro, Blasi, Wasserman & Hermann, P.A., 7777 Glades Road, Suite 400, Boca Raton, FL 33434; (561) 477-7722; rifrank@sbwlawfirm.com, and via email and Certified Mail, Return Receipt Requested, to John Weber, U.S. Chutes, Corp., 751 Park of Commerce Drive, Boca Raton, FL 33487; jweber@uschutes.com,and provide the Company ten (10) days from the date of the Company's counsel's receipt or John Weber's receipt, whichever is later, of the notice to correct such default.  If the Company fails to cure such default within said time period, Plaintiffs shall be entitled to apply for the entry of a default judgment against the Defendants, jointly and severally, for the total amount of $15,000.00, less any payments made hereunder.

3.    The Plaintiffs and the Company hereby authorize and instruct their respective attorneys to submit the Settlement Agreement to the District Court.  The Plaintiffs and Plaintiffs' counsel further agree to take whatever other actions are necessary to effectuate the dismissal with prejudice of the Civil Action, including, but not limited to, filing additional motions should the District Court disapprove the Settlement Agreement.

4.    Plaintiffs agree and acknowledge that they shall not in the future provide any services to, or be employed by, the Company.  Plaintiffs further agree and acknowledge that they will not knowingly accept, apply for, or otherwise seek employment with, or otherwise seek to perform services for, the Company, or any of its subsidiaries, divisions, related companies, or controlling shareholders (direct or indirect) at any time.  In the event that Plaintiffs are inadvertently employed by any of the foregoing (including as an independent contractor), they will promptly notify the employing person or entity of their

JM Initials _____
EH Initials _____
JB Initials _____

Page 3 of 16

**EXHIBIT "A"**

obligation to resign from such employment, and the employing entity shall have the right to require their resignation forthwith.

5.    Plaintiffs represent, warrant, and acknowledge that the Company does not owe them any wages, commissions, bonuses, vacation pay, or other compensation or payments of any kind or nature beyond what is set forth in this Agreement. Plaintiffs agree and understand that the amounts paid by or on behalf of the Company pursuant to this Agreement are being paid strictly and solely for purposes of settlement and that the Company expressly denies that the Plaintiffs are entitled to receive the Alleged Compensation Amount or any part thereof.

6.    Notwithstanding that the Company expressly denies that the Plaintiffs are entitled to receive the alleged Compensation Amount or any part thereof, Plaintiffs represent, warrant, and agree that the amounts paid by or on behalf of the Company pursuant to this Agreement represent payment-in-full of (a) the Alleged Compensation Amount; and (b) any and all others amounts which the Plaintiffs sought or could have sought in the Civil Action, including but not limited to alleged unpaid wages, alleged liquidated damages, and costs and attorney's fees, including amounts pursuant to the Fair Labor Standards Act of 1938, as amended.

7.    Plaintiffs, in consideration of this Agreement and the mutual promises set forth herein, and for other good and valuable consideration received from or on behalf of the Company, receipt whereof is hereby acknowledged, hereby *release and forever discharge* the Company and the Company's parent companies, subsidiaries, divisions, affiliates, related companies, predecessors, successors, heirs, executors, administrators, assigns, shareholders (direct or indirect), directors, officers, employees, agents, and attorneys (and the shareholders (direct or indirect), directors, officers, employees, agents, and attorneys of such parent companies, subsidiaries, affiliates, and related companies), and all persons acting by, through, under, or in concert with any of them, and John Weber, individually, and his respective heirs, executors, administrators, successors, and assigns, successors, and assigns (the Company and the foregoing other persons and entities are hereinafter defined separately and collectively as the "Defendant Releasees"), from all actions, causes of action, debts, sums of money, accounts, covenants, contracts, agreements, promises, damages, judgments, claims, and demands whatsoever, *whether known or unknown*, either in law or equity, whether statutory or common law, whether federal, state, local, or otherwise, including, but not limited to, any claims related to, or arising out of any aspect of Plaintiffs' relationship or employment with the Company, any agreement concerning such employment or relationship, or the termination of such employment or relationship, including, but not limited to:

(a)    any and all claims asserted, or which could have been asserted, in the Civil Action, including, but not limited to, any and all claims under the Fair Labor Standards Act of 1938, as amended;

JM Initials _____
EH Initials _____
JB Initials ⎯⎯

**EXHIBIT "A"**

(b)     any and all claims of wrongful discharge or breach of contract, any and all claims for equitable estoppel, any and all claims for employee benefits, including, but not limited to, any and all claims under the Employee Retirement Income Security Act of 1974, as amended, and any and all claims of employment discrimination on any basis, including, but not limited to, any and all claims under Title VII of the Civil Rights Act of 1964, as amended, under the Age Discrimination in Employment Act of 1967, as amended (the "ADEA"), under the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended, under the Civil Rights Act of 1991, as amended, under the Americans with Disabilities Act of 1990, as amended, under the Immigration Reform and Control Act of 1986, as amended, under the Family and Medical Leave Act of 1993, as amended, under the Florida Civil Rights Act of 1992, as amended, under the Florida Equal Pay Law, as amended, under the Florida Wage Discrimination Law, as amended, and under the Florida Minimum Wage Law, as amended;

(c)     any and all claims under any other federal, state, or local wage and hour law, employment law, labor law, civil rights law, human rights law, or workers' compensation law;

(d)     any and all claims of slander, libel, defamation, invasion of privacy, intentional or negligent infliction of emotional distress, negligent misrepresentation, fraud, negligent hiring, supervision or retention, assault and battery, and prima facie tort; and

(e)     any and all claims for monetary recovery, including, but not limited to, back pay, front pay, liquidated, compensatory or punitive damages, attorneys' fees, experts' fees, disbursements, and costs;

which, against the Defendant Releasees, Plaintiffs or their respective heirs, executors, administrators, successors, and assigns ever had, now has, or hereafter can, will, or may have, for, upon, or by reason of any matter, cause, or thing whatsoever from the beginning of the world to the date Plaintiffs execute this Agreement.

8.     Plaintiffs understand and acknowledge that there may be facts or information which they do not know or suspect to exist in their favor at the time they execute this Agreement, and they agree that this Agreement is intended to and does extinguish any and all claims they might have based on such facts or information.

9.     Excepting only the Civil Action, Plaintiffs represent and warrant that they have never commenced or filed, and covenant and agree never to commence, file, aid, or in any way prosecute or cause to be commenced or prosecuted against the Defendant Releasees, or any of them, any action, charge, complaint, or other proceeding, whether administrative, judicial, legislative, or otherwise, including, but not limited to, any action or proceeding for attorneys' fees, experts' fees, disbursements, or costs, based upon or seeking relief on account of actions or failures to act by the Defendant Releasees, or any of them, which may have occurred or failed to occur before their execution of this Agreement.

JM Initials _____
EH Initials _____
JB Initials _____

Page 5 of 16

**EXHIBIT "A"**

10.     Plaintiffs represent and warrant that no other person is entitled to assert any claim based on or arising out of any alleged discriminatory, unlawful, wrongful, tortious, or other conduct against them by the Defendant Releasees, or any of them, including, but not limited to, any and all claims for attorneys' fees, experts' fees, or damages resulting as a consequence thereof, based upon or seeking relief on account of actions or failures to act by the Defendant Releasees which may have occurred or failed to occur before their execution of this Agreement.  Plaintiffs further represent and warrant that they have not assigned and will never assign any such claim, and that in the event any such claim is filed or prosecuted by any other person or entity, they will cooperate fully with the Defendant Releasees and will move immediately to withdraw their name and to disassociate themselves completely from any such claim, will request such person or entity to withdraw such claim with prejudice, and will not voluntarily cooperate with or testify on behalf of the person or entity prosecuting such claim.

11.     (a)     Plaintiffs acknowledge that maintaining the Company's good reputation in the community is of *paramount importance* to the Company. Accordingly, Plaintiffs agree that they will not disparage or encourage or induce others to disparage the Company or any of the Defendant Releasees by any type of communication, whether verbally, in writing, through gesture or other non-verbal means (such as winks or nods of the head), or otherwise. This prohibition includes disparagement through any social media or apps, including but not limited to facebook, blogs, twitter, etc.

(b)     Plaintiffs agree, represent and warrant that they shall not at any point in the future (a) directly communicate with the Company, including but not limited to any officers, directors or administrative or managerial employees of the Company, and which also includes communications through any social media or apps, including but not limited to facebook, blogs, twitter, etc.; (b) visit the Company's offices, stores or places of operations; (c) step foot on any properties at which the Company is operating out of or at; (d) step foot on any customer's properties at which the Company is providing services and during the time that the Company is providing services to that customer.

12.     Plaintiffs acknowledge that if they materially breach this Agreement, breach the non-disparagement provisions of this Agreement and/or commence a suit, action, proceeding or complaint in contravention of this Agreement and waiver of claims, the Company shall be entitled to all remedies allowed in law or equity, including but not limited to the return of that portion of the liquidated damages payment paid to Plaintiffs pursuant to this Settlement Agreement.

13.     Excepting claims based upon representations, warranties, agreements, covenants, and promises made in or pursuant to this Agreement, including but not limited to the agreements set forth in Paragraphs 11 and 12 above, the Company, in consideration of this Agreement and the mutual promises set forth herein, and for other good and

JM Initials _____
EH Initials _____
JB Initials _____

**EXHIBIT "A"**

valuable consideration received from or on behalf of the Plaintiffs, receipt whereof is hereby acknowledged, *release and forever discharge* the Plaintiffs and Plaintiffs' heirs, executors, administrators, successors, and assigns, from all actions, causes of action, debts, sums of money, accounts, covenants, contracts, agreements, promises, damages, judgments, claims, and demands whatsoever, *whether known or unknown*, either in law or equity, whether statutory or common law, whether federal, state, local, or otherwise, including, but not limited to, any claims related to, or arising out of any aspect of the Plaintiffs' employment or relationship with the Company, any agreement concerning such employment or relationship, or the termination of such employment or relationship, which, against the Plaintiffs, the Company ever had, now has or hereafter can, will, or may have, by reason of any matter or cause whatsoever from the beginning of the world to the date the Company executes this Agreement.

14.    Should any part, term, or provision of this Agreement be declared or determined by a court of competent jurisdiction to be illegal, invalid, or unenforceable, the validity of the remaining parts, terms, or provisions will not be affected thereby, and said illegal, invalid or unenforceable part, term, or provision will be deemed not to be a part of this Agreement.

15.    No payment made pursuant to this Agreement shall constitute or be considered "wages," "earnings" or "compensation" for any purpose under any retirement plan, welfare plan, stock purchase plan, bonus plan, employee stock ownership plan or vacation policy of the Company.

16.    In the event that there is any litigation (including appellate proceedings or arbitration) arising out of or relating to this Agreement, the prevailing party shall recover, in addition to any and all other relief, his or its attorneys' fees and expenses.

17.    This Agreement is to be interpreted, construed, and enforced pursuant to the substantive laws of the State of Florida and, where applicable, federal law.  Any action or proceeding relating to or arising out of this Agreement shall be brought in the District Court or in a court of competent jurisdiction in Palm Beach County, Florida.

18.    Should any term or provision of this Agreement require interpretation or construction, it is agreed by the parties that the court or other entity interpreting or construing this document shall not apply any presumption that the terms and provisions of this Agreement shall be more strictly construed against any particular party, it being agreed that all parties and their respective attorneys have fully participated in the preparation of all terms and provisions of this Agreement.

19.    This Agreement sets forth the entire agreement between the parties hereto, fully supersedes any and all prior agreements or understandings between the parties regarding the subject matter hereof, and may not be modified orally.

JM Initials _____
EH Initials _____
JB Initials _____

Page 7 of 16

**EXHIBIT "A"**

20.    This Agreement is not, and shall not in any way be construed as, an admission by the Company or any of the other Defendant Releasees of any liability to, or of any unlawful or otherwise wrongful acts against, the Plaintiff or any other person, and the Company specifically disclaims any liability to, or any unlawful or otherwise wrongful acts against, the Plaintiffs or any other person on the part of the Company or any of the other Defendant Releasees. This Agreement shall not be admissible or discoverable in any court or administrative proceeding other than as necessary in an action or proceeding for the express purpose of enforcing or construing this Agreement.

21.    Plaintiffs expressly represent, warrant, and acknowledge that the terms and provisions of this Agreement herein stated are the only consideration for signing this Agreement; that no other promise or agreement of any kind has been made by, to or with any person or entity whatsoever to cause the signing of this Agreement; and that, in executing this Agreement, they do not rely and has not relied upon any representation or statement made by any of the Defendant Releasees or by any of the Defendant Releasees' agents, representatives, or attorneys with regard to the subject matter, basis, or effect of this Agreement or otherwise.

22.    Plaintiffs represent and acknowledge that their signatures hereon show that they have decided, knowingly, voluntarily, freely and without coercion, after consulting with appropriate legal counsel, to execute this Agreement in return for the consideration paid by the Company, and that their signatures appearing hereon are genuine.

23.    Notwithstanding any other provision of this Agreement to the contrary, the Company and Plaintiffs agree that:

(a)    Plaintiff McDonald, in consideration of the promises made and the payments and benefits provided by the Company, as described herein (which Plaintiff McDonald agrees constitute consideration in addition to anything of value to which he is already entitled), agrees that this Agreement constitutes a knowing and voluntary waiver of all rights or claims he may have against the Defendant Releasees, or any of them, including, but not limited to, all rights or claims arising under the ADEA, including, but not limited to, all claims of age discrimination in employment and all claims of retaliation in violation of the ADEA.

Plaintiffs Hupalo and Bishop, Plaintiff, in consideration of the promises made and the payments and benefits provided by the Company, as described herein (which Plaintiffs Hupalo and Bishop agree constitute consideration in addition to anything of value to which they are already entitled), agree that this Agreement constitutes a knowing and voluntary waiver of all rights or claims they may have against the Defendant Releasees, or any of them.

JM Initials _____
EH Initials _____
JB Initials _____

Page 8 of 16

**EXHIBIT "A"**

(b)      By entering into this Agreement, the parties do not waive rights or claims that may arise after the date this Agreement is executed.

(c)      This Agreement does not affect the rights and responsibilities of the U.S. Equal Employment Opportunity Commission (the "EEOC") or like agencies to enforce the ADEA and other laws, and will not affect or be used to interfere with Plaintiffs' protected right to file a charge or participate in an investigation or proceeding conducted by the EEOC or like agencies. Plaintiffs further agree that they knowingly and voluntarily waives all rights or claims (that arose prior to their execution of this Agreement) that they may have against the Defendant Releasees, or any of them, to receive any benefit or remedial relief (including, but not limited to, reinstatement, back pay, front pay, damages, and attorneys' fees) as a consequence of any charge filed with the EEOC or like agencies, or of any litigation concerning any facts alleged in any such charge.

(d)      This Agreement will not affect or be used to interfere with Plaintiff McDonald's protected right to test in any court of competent jurisdiction, under the Older Workers Benefit Protection Act (or like statute or regulation), the validity of the waiver of rights set forth in Paragraph 7 (and its subparagraphs) of this Agreement.

(e)      For a period of seven (7) days following Plaintiff McDonald's execution of this Agreement, Plaintiff McDonald has the right to revoke his release of any claims arising under the ADEA set forth in this Agreement by written notice delivered within such period to the Company's attorneys as set forth in Paragraph 26(a) below.

(f)      Plaintiffs and the Company further agree and acknowledge that Plaintiff McDonald's release of any claims arising under the ADEA set forth in this Agreement will not become effective or enforceable until the eighth (8th) day after its execution by Plaintiff McDonald; and that in the event Plaintiff McDonald revokes his release of any claims arising under the ADEA set forth in this Agreement prior to said eighth (8th) day, his release of any claims arising under the ADEA set forth in this Agreement will automatically be deemed null and void. Plaintiff McDonald's revocation of his release of any claims arising under the ADEA set forth in this Agreement will not revoke and has no effect on the validity and enforceability of the remainder of this Agreement and the remainder of this Agreement, as to all Plaintiffs, shall remain in full force and effect.

(g)      Plaintiff McDonald's acceptance of the monies or other consideration paid by the Company, as described herein, at any time more than seven (7) days after Plaintiff McDonald has executed this Agreement, will constitute an admission by Plaintiff McDonald that he has not revoked his release of any claims arising under the ADEA set forth in this Agreement during the revocation period, and that his release of any claims arising under the ADEA set forth in this Agreement has become fully effective and enforceable.

JM Initials _____
EH Initials _____
JB Initials _JB_

**EXHIBIT "A"**

(h)     The Company hereby advise and urge Plaintiffs in writing to consult with an attorney prior to executing this Agreement.

(i)     Plaintiff McDonald represents, warrants and acknowledges that the Company gave him a period of twenty-one (21) days in which to consider this Agreement before executing it.  If Plaintiff McDonald executes this Agreement at any time prior to the end of such twenty-one (21) day period, such early execution was a knowing and voluntary waiver of his right to consider this Agreement for twenty-one (21) days, and was due to his belief that he had ample time in which to consider and understand this Agreement, and to review it with an attorney.

24.     This Agreement may be executed in counterparts, each of which shall be deemed an original, and the counterparts shall together constitute one and the same instrument, notwithstanding that the parties hereto may not be signatories to the original or the same counterpart.  The parties agree and acknowledge that a photocopy, facsimile copy or email copy of an executed signature or initialed page may be used in place of an original executed signature or initialed page for any purpose.

25.     Any notice, correspondence, payment or other communication contemplated by or connected with this Agreement shall be directed as follows:

(a)     If to the Company:

Robin I. Frank, Esq.
Shapiro, Blasi, Wasserman & Hermann, P.A.
7777 Glades Road, Suite 400
Boca Raton, Florida 33484
Telephone:   (561) 477-7800
Facsimile:    (561) 477-7722
E-mail:         rifrank@sbwlawfirm.com

(b)     If to the Plaintiffs:

David Markel, Esq.
The Markel Law Firm
777 Brickell Ave., Suite 500
Miami, FL 33131
Tel:   (305) 458-1282
Fax:   (800) 407-1718
E-mail:         David.Markel@markel-law.com

27.     The parties agree and stipulate to the entry of an order approving this Settlement Agreement and dismissing the Civil Action with prejudice, and they agree to

JM Initials _____
EH Initials _____
JB Initials _JB_

Page 10 of 16

**EXHIBIT "A"**

request that the District Court retain jurisdiction to enforce the terms of this Settlement Agreement, should such enforcement be necessary.

28.     **PLAINTIFFS EXPRESSLY REPRESENT AND WARRANT THAT THEY (a) HAVE CAREFULLY READ THIS AGREEMENT OR HAD IT READ TO THEM; (b) FULLY UNDERSTAND THE TERMS, CONDITIONS, AND SIGNIFICANCE OF THIS AGREEMENT; (c) HAVE HAD AMPLE TIME TO CONSIDER AND NEGOTIATE THIS AGREEMENT; (d) HAVE HAD A FULL OPPORTUNITY TO REVIEW THIS AGREEMENT WITH THEIR ATTORNEY, DANIEL FELDMAN, ESQ., AND HAVE DONE SO; AND (e) HAVE EXECUTED THIS AGREEMENT VOLUNTARILY, KNOWINGLY, AND WITH THE ADVICE OF THEIR ATTORNEY.**

US CHUTES LLC                                    US CHUTES, CORP

By: _____        By: _____
     Manfred John Weber, Jr., as Manager        Manfred John Weber, Jr., as President

Dated: _____        Dated: _____

JOHN WEBER                                    JOSHUA BISHOP

By: _____        By: *Joshua Bishop*
     John Weber                                    Joshua Bishop

Dated: _____        Dated: 8/14/16

JEFFREY McDONALD                          ELKE HUPALO

By: _____        By: _____
     Jeffrey McDonald                              Elke Hupalo

Dated: _____        Dated: _____

JM Initials _____
EH Initials _____
JB Initials _JB_

Page 11 of 16

**EXHIBIT "A"**

request that the District Court retain jurisdiction to enforce the terms of this Settlement Agreement, should such enforcement be necessary.

28. **PLAINTIFFS EXPRESSLY REPRESENT AND WARRANT THAT THEY (a) HAVE CAREFULLY READ THIS AGREEMENT OR HAD IT READ TO THEM; (b) FULLY UNDERSTAND THE TERMS, CONDITIONS, AND SIGNIFICANCE OF THIS AGREEMENT; (c) HAVE HAD AMPLE TIME TO CONSIDER AND NEGOTIATE THIS AGREEMENT; (d) HAVE HAD A FULL OPPORTUNITY TO REVIEW THIS AGREEMENT WITH THEIR ATTORNEY, DANIEL FELDMAN, ESQ., AND HAVE DONE SO; AND (e) HAVE EXECUTED THIS AGREEMENT VOLUNTARILY, KNOWINGLY, AND WITH THE ADVICE OF THEIR ATTORNEY.**

US CHUTES LLC

By: _____
    Manfred John Weber, Jr., as Manager

Dated: _____

US CHUTES, CORP

By: _____
    Manfred John Weber, Jr., as President

Dated: _____

*MANFRED* JOHN WEBER *JR.*

By: _____
*MANFRED* John Weber *JR*

Dated: _____

JOSHUA BISHOP

By: _____
    Joshua Bishop

Dated: _____

JEFFREY McDONALD

By: _____
    Jeffrey McDonald

Dated: _____

ELKE HUPALO

By: _____
    Elke Hupalo

Dated: _____

JM Initials _____
EH Initials _____
JB Initials _____

Page 11 of 16

**EXHIBIT "A"**